UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
VALERIE V. LEARY,

                                        Plaintiff,


- against -
                                                                    OPINION AND ORDER

CIVIL SERVICE EMPLOYEES ASSOCIATION,
COUNTY OF WESTCHESTER, ROCCO POZZI,                                 No. 11-CV-716 (CS)
LOUIS CONTE, JOHANNA CONNORS, JAMES M.
ROSE, KAREN PECORA, BARBARA DESIMONE,
STEVEN SLEDZIK, JUSTIN PRUYNE,
                                        Defendants.
--------------------------------------------------------------------x
<u>Appearances:</u>
Valerie V. Leary
Mount Vernon, NY
Pro Se *Plaintiff*

Nancy E. Hoffman
Kara L. Hilburger
CSEA Legal Department
Albany, New York
*Counsel for Defendants*
*CSEA, Karen Pecora, and*
*Barbara DeSimone*

Sara M. Beaty
Westchester County Attorney's Office
White Plains, New York
*Counsel for Defendants*
*Westchester County, Rocco Pozzi,*
*Louis Conte, Johanna Connors,*
*Justin Pruyne, and Steven Sledzik*

R. Evon Idahosa
Nicholas Melissinos
Furman Kornfeld & Brennan LLP
New York, New York
*Counsel for Defendant James M. Rose*

Seibel, J.

Before this Court are the Motions to Dismiss of Defendants Westchester County Department of Probation, Westchester County Department of Law, Rocco Pozzi, Louis Conte, Johanna Connors, Justin Pruyne, and Steven Sledzik (collectively, the "County Defendants")[1] pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 39); Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO ("CSEA"), Karen Pecora, and Barbara DeSimone (collectively, the "CSEA Defendants") pursuant to Rules 12(b)(1), (6), (Doc. 35); and James M. Rose, pursuant to Rules 12(b)(1), (6), (Doc. 59).[2]  For the following reasons, Defendants' Motions are GRANTED.

## I.    **Background**

All of Plaintiff's factual allegations are accepted as true for the purposes of these Motions and construed in the light most favorable to Plaintiff.

---

[1] Plaintiff incorrectly named the Westchester County Department of Probation and Westchester County Department of Law as Defendants.  In a suit alleging a deprivation of constitutional rights by an agency of a municipality, the municipality is the real party in interest and the proper named party in the action.  *Bowman v. City of Middletown*, 91 F. Supp. 2d 644, 648 n.1 (S.D.N.Y. 2000).  Therefore, "[t]o avoid unnecessary, time consuming motions" regarding this technical error, the Court has amended the caption to remove the improperly named parties and has substituted the real party in interest, the County of Westchester.  *Manning v. Cnty. of Westchester*, No. 93-CV-3366, 1995 WL 12579, at *2 (S.D.N.Y. Jan. 5, 1995).  The County Defendants appear to concur with this course of action.  (*See* Memorandum of Law in Support of County Defendants' Motion to Dismiss the Instant Action Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("County Mem."), (Doc. 40), 1 n.1.)

Copies of all unpublished opinions cited herein will be sent to the *pro se* Plaintiff along with this Opinion and Order.

[2] Defendant Rose's initial attempt to file his Motion to Dismiss was insufficient due to an electronic filing error.  (*See* Doc. 43.)  His Memorandum of Law and Affidavit were promptly re-filed.  (*See* Docs. 47, 48.)  Only the Notice of Motion was belatedly filed, in April 2012.  (*See* Doc. 59.)  Because all parties received Defendant Rose's papers and completed the briefing on the Motions according to schedule, and the error appears to have had no impact, the Court disregards the error.

A.      Plaintiff's Employment with the Westchester County Department of Probation

Plaintiff is an African-American woman.  (SAC 2.)[3]  She was employed by Westchester County for nineteen years as a probation officer.  (*Id.* at 1; *see* Beaty Decl. Ex. C ¶ 9.[4])  She completed a one-year probationary term as a probation officer in or around June 1991 and thereafter served as a probation officer with permanent status until her termination in 2009.  (SAC 1.)  At all relevant times she was a member of CSEA.  (*Id.*; CSEA Mem. 4.[5])

B.      Charges Against Plaintiff

The record indicates that on or around September 29, 2008, Plaintiff's employer served her with a Notice of Charges and Notice of Hearing, both dated September 25, 2008.  (Beaty Decl. Ex. C ¶ 1 (Hearing Officer's Report and Recommendation); Idahosa Aff. Ex. A (Notice of Charges).[6])  The charges were amended three times, and the Third Amended Notice charged Plaintiff with sixty-eight specifications of "misconduct and/or incompetence" over an approximately eighteen-month period, based on "fail[ure] to follow directives to log, update or provide supervisors with information properly concerning her assigned cases, fail[ure] to follow directives to file timely violations of probation, fail[ure] to follow directions and policies regarding closing cases and fail[ure] to follow a direction to attend a mandatory DNA collection session."  (Beaty Decl. Ex. C ¶ 3.)  All charges concerned behavior that occurred between March 2007 and October 2008.  (*Id.* ¶¶ 10, 13–58; SAC 1.)  Plaintiff sought a hearing pursuant to New York Civil Service Law Section 75[7] in connection with the charges.  By letter dated September

---

[3] "SAC" refers to Plaintiff's Second Amended Complaint, filed on Sept. 30, 2011.  (Doc. 33.)  The page numbers refer to the pages in the typewritten attachment to the SAC entitled "III.  Statement of Claim."

[4] "Beaty Decl." refers to the Declaration of Sara M. Beaty submitted in support of the County Defendants' Motion to Dismiss.  (Doc. 41.)

[5] "CSEA Mem." refers to the Memorandum of Law in Support of the Motion to Dismiss on Behalf of Defendant CSEA, Ms. Pecora, and Ms. DeSimone.  (Doc. 37.)

[6] "Idahosa Aff." refers to the Affidavit of R. Evon Idahosa in Support of Motion to Dismiss.  (Doc. 48.)

[7] Section 75 of the New York Civil Service Law ("Section 75") provides in relevant part:

25, 2008, Rocco Pozzi, Commissioner of the Westchester County Department of Probation (the

"Probation Department"), designated Steven T. Sledzik as the Administrative Hearing Officer

("AHO") pursuant to Section 75, and directed Sledzik to submit his findings and

recommendations to him.  (Beaty Decl. Ex. C ¶ 4; SAC 2.)  A hearing was held on March 11,

2009 and March 20, 2009.  (Beaty Decl. Ex. C ¶ 5; SAC 2.)  Defendant Pruyne, Assistant

County Attorney at the Westchester County Department of Law, represented the Probation

Department, and Defendant Rose represented Plaintiff.  (*Id.*)  The Probation Department offered

the testimony of three witnesses, whom Plaintiff's counsel cross-examined, and Plaintiff testified

on her own behalf.  (Beaty Decl. Ex. C ¶ 6.)

     The AHO found Plaintiff guilty of nearly all of the charges, stating that over an "eighteen

month time period, [Plaintiff] failed to act timely on more than forty probationers' files,"[8] and

that "her failures and omissions are fairly egregious and of a long-term, almost chronic duration,

and seemingly intentional."  (*Id.* ¶¶ 54–56.)  The AHO ultimately recommended that Plaintiff be

terminated.  (*Id.* ¶ 62.)  By letter dated June 23, 2009, Commissioner Pozzi adopted the findings

and recommendation of the AHO and terminated Plaintiff, effective immediately.  (*Id.* Ex. D.)

---

A person against whom removal or other disciplinary action is proposed shall have written notice thereof and of the reasons therefor, shall be furnished a copy of the charges preferred against him and shall be allowed at least eight days for answering the same in writing.  The hearing upon such charges shall be held by the officer or body having the power to remove the person against whom such charges are preferred, or by a deputy or other person designated by such officer or body in writing for that purpose.  In case a deputy or other person is so designated, he shall, for the purpose of such hearing, be vested with all the powers of such officer or body and shall make a record of such hearing which shall, with his recommendations, be referred to such officer or body for review and decision.  The person or persons holding such hearing shall, upon the request of the person against whom charges are preferred, permit him to be represented by counsel, or by a representative of a recognized or certified employee organization, and shall allow him to summon witnesses in his behalf.  The burden of proving incompetency or misconduct shall be upon the person alleging the same.

N.Y. Civ. Serv. Law § 75(2).

    [8] At any given time Plaintiff had about ninety cases.  (Beaty Decl. Ex. C ¶ 55.)

C.      Procedural History

Plaintiff commenced this lawsuit by filing a complaint on January 31, 2011, alleging that

Defendants discriminated against her in violation of Title VII of the Civil Rights Act of 1964.

(Doc. 2.)  Plaintiff amended her complaint twice, and her Second Amended Complaint—the

operative complaint—alleges due process and equal protection violations under the Fifth and

Fourteenth Amendments, pursuant to 42 U.S.C. § 1983.  (SAC Section II.)

## II.   **Documents the Court Will Consider**

When deciding a motion to dismiss, the court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in
> it by reference, (2) documents 'integral' to the complaint and relied upon in it,
> even if not attached or incorporated by reference, (3) documents or information
> contained in [a] defendant's motion papers if plaintiff has knowledge or
> possession of the material and relied on it in framing the complaint, (4) public
> disclosure documents required by law to be, and that have been, filed with the
> Securities and Exchange Commission, and (5) facts of which judicial notice may
> properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation

marks omitted); *cf. Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)

("Where plaintiff has actual notice of all the information in the movant's papers and has relied

upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6)

motion into one under Rule 56 is largely dissipated.").

Each group of Defendants has submitted attachments to its Motion.  The County

Defendants have attached the following:  Plaintiff's SAC, the Second Amended Notice of

Charges against Plaintiff,[9] the AHO's Report and Recommendation, the letter from

---

[9] No party submitted a copy of the Third Amended Notice of Charges, but it appears that the Third
Amended Notice is identical to the Second Amended Notice, except that it has certain charges stricken.  (*See* Beaty
Decl. Ex. C ¶ 1 ("Where the Department of Probation . . . withdrew charges after service of the original set or
amended sets of changes, the Third Amended Notice of Charges has any withdrawn charges stricken out with the

Commissioner Pozzi to Plaintiff notifying her of his adoption of the AHO's findings and of her termination, and Plaintiff's correspondence with the Equal Employment Opportunity Commission ("EEOC").  (*See* Beaty Decl. Exs. A–E.)  I will consider each of these documents, except for the EEOC correspondence, because they are integral to the SAC and Plaintiff has knowledge or possession of these materials and relied on them in framing the SAC.  Indeed, the entire SAC is based on grievances relating to the charges lodged against Plaintiff, the hearing process, the findings by the AHO, and the Commissioner's decision to terminate Plaintiff.  As such, the charges themselves, the AHO Report, and the letter memorializing the Commissioner's adoption of the findings are all integral to the SAC.  It does not appear, however, that Plaintiff relied on the EEOC correspondence in framing the SAC, or that the correspondence is relevant to the SAC because, as discussed below, Plaintiff appears to have abandoned her Title VII claim.

The CSEA Defendants have attached to their Motion the original Complaint, including Plaintiff's attachments thereto, (Doc. 2); the SAC; the AHO's Report and Recommendation; and the letter from Commissioner Pozzi notifying Plaintiff of his adoption of the AHO's findings and of her termination.  (*See* Hilburger Aff. Exs. A–D.)[10]  I need not consider the original Complaint and its attachments, as I find them to be irrelevant and/or cumulative, but will consider the CSEA Defendants' other submissions because, as stated above, they are integral to the SAC and Plaintiff has knowledge or possession of these materials and relied on them in framing the SAC.

Defendant Rose has submitted the original and First and Second Amended Notices of Charges served on Plaintiff, the AHO's Report and Recommendation, the letter from Commissioner Pozzi notifying Plaintiff of his adoption of the AHO's findings and of her

---

notation "WITHDRAWN.").)
[10] "Hilburger Aff." refers to Karen L. Hilburger's Affidavit in Support of Defendants' Motion to Dismiss. (Doc. 36.)

termination, and Plaintiff's correspondence with the EEOC.  (*See* Idahosa Aff. Exs. A–F.)  As stated above, I will consider all of these documents except for the EEOC correspondence because they are integral to the SAC and Plaintiff has knowledge or possession of these materials and relied on them in framing the SAC.

Plaintiff attached several documents to her opposition to Defendants' Motions:  (1) a March 13, 2001 memorandum from Plaintiff to her Supervising Probation Officer, Defendant Connors, containing questions regarding Connors's instruction to Plaintiff to submit a daily Violation of Probation Supervision Report; (2) a form dated March 18, 2008, provided to Plaintiff by Defendant Conte and signed by Plaintiff, concerning her desire to have a representative of her employee organization present during questioning in connection with her disciplinary action; (3) a notice of temporary reassignment provided by Defendant Pozzi to Plaintiff dated January 22, 2009; (4) a memorandum from Plaintiff to Defendant Pozzi dated January 30, 2009 regarding her inability to access the Probation Department's CTAG computer system; (5) an April 10, 2009 memorandum from Defendant Pozzi to all Probation Department employees regarding the Probation Department's policy on discussions with elected officials or administrative staff of agencies; (6) the AHO's Report and Recommendation; and (7) a July 17, 2009 letter from Plaintiff to Defendant DeSimone notifying her that Plaintiff wished to "rescind any application to appeal [her] termination of employment[] to the CSEA committee" and that she "elect[s] to appeal [her] case using private counsel."  (*See* Attachments to P's Mem.)[11]  As stated above, I will consider the AHO's Report and Recommendation.  I will not, however, consider the other documents submitted by Plaintiff because none of them appears to be

_____

[11] "P's Mem." refers to Plaintiff's Memorandum dated and filed on December 15, 2011 in opposition to Defendants' Motions to Dismiss.  (Doc. 53.)

incorporated into or integral to the SAC; indeed, none of the information provided in these
attachments is ever referred to or made use of in the SAC or in Plaintiff's Memorandum.

**III.**   **Discussion**

    A.   <u>Legal Standards</u>

        1.   <u>Motion to Dismiss</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim
has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual
allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires
more than labels and conclusions, and a formulaic recitation of the elements of a cause of action
will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks
omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure
from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of
discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678–79.

    In considering whether a complaint states a claim upon which relief can be granted, the
court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not
entitled to the assumption of truth," and then determines whether the remaining well-pleaded
factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.
Deciding whether a complaint states a plausible claim for relief is "a context-specific task that
requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"While *pro se* complaints must contain sufficient factual allegations to meet the plausibility standard, [courts] read them with 'special solicitude' and interpret them 'to raise the strongest arguments that they *suggest*.'"  *Roman v. Donelli*, 347 F. App'x 662, 663 (2d Cir. 2009) (summary order) (emphasis in original) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

2.     Section 1983

Plaintiff asserts two claims pursuant to 42 U.S.C. § 1983 ("Section 1983").  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To successfully assert a Section 1983 claim, a plaintiff must demonstrate: "(1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Mitchell v. Dep't of Corr.*, No. 05-CV-5792, 2008 WL 744041, at *9 (S.D.N.Y. Feb. 20, 2008) (internal quotation marks omitted).

B.     Title VII Claim

In her original complaint, Plaintiff asserted discrimination claims against Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Plaintiff did not

advance these claims in the SAC.  In an excess of caution, all three groups of Defendants

addressed the Title VII claim in their Memoranda in support of their Motions, but Plaintiff's

Memorandum in opposition to the Motions mentions only her constitutional causes of action.

Accordingly, any Title VII claim is deemed abandoned.  *See Kamanou v. Exec. Sec'y of Comm'n

of Econ. Cmty. of W. African States*, No. 10-CV-7286, 2012 WL 868700, at *3 (S.D.N.Y. Mar.

14, 2012) (plaintiff faces obligation, in response to defendant's motion to dismiss, to "present

arguments as to each of her causes of action.  Plaintiff's failure to do so constitutes abandonment

of those claims.").[12]

C.     Claims Against the County Defendants

Plaintiff seeks relief pursuant to Section 1983 for the County Defendants' alleged

violations of her rights under the Due Process and Equal Protection Clauses of the U.S.

Constitution.  Because the SAC fails to state a claim on which relief may be granted, I need not

address the issues of immunity and *Monell* liability raised by Defendants and which might also

serve as grounds on which to dismiss these claims.

1.     Procedural Due Process

Plaintiff's procedural due process claims are based on three instances of alleged

misconduct: the County Defendants' failure to (1) follow certain administrative and state

---

[12] Were I to consider the EEOC correspondence attached to Defendants' Motions, I would likely find that any Title VII claim by Plaintiff would fail because it was not timely filed.  Under Title VII, a plaintiff filing a discrimination charge with a state or local agency must file it within 300 days of the complained-of action.  *See* 42 U.S.C. § 2000e-5(e)(1); *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a *timely* complaint with the EEOC.") (emphasis added).  The 300-day period begins to run on the date that the alleged discriminatory act took place.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act.").  Here, the last alleged instance of discrimination occurred on June 23, 2009 when Plaintiff was terminated.  According to the EEOC correspondence submitted with Defendants' Motions, Plaintiff filed her discrimination charge with the EEOC and New York State Division of Human Rights on or around July 9, 2010.  (*See* Beaty Decl. Ex. E.)  Her charge was therefore not filed within the 300-day statute of limitations, and thus appears to be untimely, perhaps explaining why Plaintiff did not pursue her Title VII claims.

procedures requiring them to evaluate Plaintiff's performance and provide her with feedback, (2) provide Plaintiff with notice that her job was in jeopardy, and (3) conduct a pre-termination hearing in an unbiased tribunal.  (*See* P's Mem. 1–3.)  Plaintiff also takes issue with the substance of the AHO's findings and recommendation.  (*Id.* at 3.)

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  In order to establish a procedural due process violation, a plaintiff must:  (1) identify a protected property or liberty interest; (2) establish that governmental action with respect to that right amounted to a deprivation; and (3) demonstrate that the deprivation occurred without due process.[13]  *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995); *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 268 (S.D.N.Y. 2006).  The parties do not contest that Plaintiff had a protected property interest in her job or that her termination amounted to a deprivation of that interest.  Therefore, the only issue is whether

---

[13] "The Supreme Court has identified two types of procedural due process challenges:  first, a challenge based on a state's regulations or procedures; and second, a challenge based on unauthorized, random acts of state employees."  *M.H. v. Bristol Bd. of Educ.*, 169 F. Supp. 2d 21, 33 (D. Conn. 2001) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)).  In the former scenario, an act is considered to be state policy if it was effectuated by "high-ranking officials who are ultimate decision-maker[s] and have final authority over significant matters, even if [the act is] contrary to law."  *Rivera-Powell v. N.Y.C. Bd. of Elections.*, 470 F.3d 458, 465 (2d Cir. 2006) (first alteration in original) (internal quotation marks omitted).  As to the latter, "the Due Process Clause of the Fourteenth Amendment is not violated . . . so long as the State provides a meaningful postdeprivation remedy."  *Hellenic Am. Neighborhood Action Comm. v. City of N.Y. ("HANAC")*, 101 F.3d 877, 880 (2d Cir. 1996).

If the conduct at issue here were alleged to be random and unauthorized, the availability of a proceeding under Article 78 of the New York Civil Practice Law and Rules ("CPLR") would prove fatal to the due process claim.  *See HANAC*, 101 F.3d at 881–82.  With the exception of Plaintiff's claim regarding the AHO's bias, however, the County Defendants' challenged conduct appears to have been pursuant to state procedures and/or by high-level officials, and indeed, no party alleges otherwise.  Therefore, a due process analysis is appropriate, because when a deprivation is pursuant to state procedure, "the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process."  *Rivera-Powell*, 470 F.3d at 465; *see Velez v. Levy*, 401 F.3d 75, 91 (2d Cir. 2005) (It is a "long accepted premise that due process dictates that persons ordinarily deserve some kind of hearing *prior* to the deprivation of a liberty interest, and that it is only where the state is effectively unable to anticipate and prevent a random deprivation of a liberty interest, [that] post deprivation remedies might satisfy due process.  For this reason, . . . post-deprivation remedies do not suffice where the government actor in question is a high ranking official with final authority over significant matters.") (emphasis and first alteration in original) (internal quotation marks and citations omitted).

Plaintiff was afforded due process in connection with her hearing and termination.  I find that the conduct of which Plaintiff complains does not amount to a due process violation.

             a.       <u>Failure to Evaluate Plaintiff's Performance and Provide her with Feedback</u>

Plaintiff alleges that she was not afforded due process prior to her termination because Defendants lodged disciplinary charges against her without evaluating her performance as required by various administrative and state regulations—including N.Y. Comp. Codes R. & Regs. tit. 4, § 35.4,[14]—or counseling her about her deficiencies.  (*See* SAC 1; P's Mem. 1–4.) For example, she states that she did not receive "supervisory guidance in handling a demanding workload," was not provided with "goals, objectives or priorities," was "not told what [she] was doing wrong," "received no active coaching," (SAC 2), and did not have "notice . . . of what kinds of conduct would result in dismissal," (P's Mem. 4); instead, she was "criticized by the [probation] department administration . . . for doing [her] job the wrong way" and the Assistant Commissioner and her supervisor simply "focused on [her] weaknesses," (SAC 2).

Plaintiff has failed to plausibly allege that these actions amounted to a denial of due process.  She does not contest that she was afforded a pre-termination hearing—one which

---

[14] N.Y. Comp. Codes R. & Regs. tit. 4, § 35.4 provides:

The Department of Civil Service shall:
(a) prescribe or approve the rating period and the manner, form and time at which performance ratings shall be submitted;
(b) prescribe or approve the manner, form and frequency of employee appraisals;
(c) conduct interviews and report to the commission on performance rating appeals;
(d) refuse to accept the performance ratings of any agency where the performance of employees has not been properly evaluated, or where reports of unsatisfactory performance or attendance are inadequate;
(e) review and report to the commission concerning the operation of performance rating programs which have been exempted from these rules;
(f) refuse to approve the promotion of an employee whose performance is rated as unsatisfactory;
(g) direct the correction of any manifest errors made in reporting performance ratings or in the crediting of such ratings.

occurred over the course of two days and at which she was represented by counsel, witnesses were called and evidence presented, and she testified on her own behalf.  She also does not contest that in advance of that hearing she was provided with detailed notice of the failings on which Defendants intended to rely at the hearing.  Moreover, that notice could not have come out of left field given the informal criticisms of her performance she acknowledges.  Therefore, even if Defendants improperly failed to evaluate her performance and provide her with formal coaching and assistance prior to initiating disciplinary proceedings, she was nonetheless afforded all the process she was due prior to her termination.[15]  *See McDarby v. Dinkins*, 907 F.2d 1334, 1337–38 (2d Cir. 1990) ("When the minimal due process requirements of notice and [a] hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations."); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985) (A "pretermination hearing . . . need not be elaborate. . . . In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action.") (internal citations and quotation marks omitted); *Baker v. Schriro*, No. 10-CV-4227, 2011 WL 6026237, at *3 (E.D.N.Y. Dec. 2, 2011) (where Plaintiff received notice of pre-termination hearing and at hearing was "represented by counsel, called witnesses and testified herself," pre-termination process was "certainly beyond minimal and exceed[ed] the very limited constitutional requirement") (internal quotation marks omitted); *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 612 (E.D.N.Y. 2011) ("where an adequate post-deprivation procedure is available," such as the ability to bring an Article 78 proceeding, "the requisite [pretermination] hearing is a minimal one [that] does not purport to

---

[15] Plaintiff also had the opportunity, apart from her termination, to challenge the County Defendants' failure to evaluate her performance, if indeed such evaluations were required.  Article 78 permits a proceeding alleging that a body or official "failed to perform a duty enjoined upon it by law."  N.Y. C.P.L.R. § 7803(1).

resolve the propriety of the discharge, but serves mainly as a check against a mistake being

made" with regard to the grounds for termination) (alterations in original) (internal quotation

marks omitted); *Seabrook v. City of N.Y.*, No. 99-CV-9134, 1999 WL 694265, at *3 n.7

(S.D.N.Y. Sept. 7, 1999) (availability of pre-termination hearing along with opportunity to

appeal decision under Article 78 "cannot be said to violate Due Process"), *aff'd*, 210 F.3d 355

(2d Cir. 2000) (summary order); *cf. Vialez v. N.Y.C. Hous. Auth.*, 783 F. Supp. 109, 113

(S.D.N.Y. 1991) ("[I]f a plaintiff had an opportunity to contest a defendant's actions but failed to

do so, there can be no claim for violation of his or her procedural due process rights under 42

U.S.C. § 1983.").

        b.    Notice

      It is well settled that "[t]he essential requirements of due process . . . are notice and an

opportunity to respond." *Loudermill*, 470 U.S. at 546.  Plaintiff does not allege that she was not

afforded notice of her Section 75 hearing.  Rather, she alleges that she was not "warned" by

Defendants that her "employment was in jeopardy."  (SAC 1; *see* P's Mem. 2.)  Plaintiff's claim

that her lack of notice of possible termination amounted to a due process violation fails for two

reasons.  First, due process requires only that Plaintiff be given "'notice reasonably calculated . .

. to apprise interested parties of the pendency of the action and afford them an opportunity to

present their objections.'"  *Reed*, 806 F. Supp. 2d at 614 (quoting *Jones v. Flowers*, 547 U.S.

220, 226 (2006)).  If, as she concedes, Plaintiff was aware that she would be subject to discipline,

due process does not require that Plaintiff be given notice in advance of the form that discipline

might take.

      Second, even if Plaintiff's assertion that she was entitled to notice that her job was in

jeopardy had constitutional import, her claim that she did not receive such notice is not plausible.

Indeed, it is flatly contradicted by the record.  The original, First Amended, and Second Amended Notices of Charges served on Plaintiff beginning in September 2008 explicitly stated: "If you are found guilty of any of the above charges, the penalty or punishment imposed upon you may consist of dismissal from service . . . ."  (Idahosa Aff. Exs. A, C–D.)  They also refer specifically to Section 75, which covers "removal or other disciplinary action."  N.Y. Civ. Serv. Law § 75.  Nowhere does Plaintiff allege that she did not receive the Notices of Charges[16] or provide any reason why, despite the clear statements in the Notices, she was unaware that her employment was in jeopardy.

c.   <u>Biased Tribunal</u>

Plaintiff next alleges that she suffered a due process violation because her hearing was conducted in a biased fashion.  More specifically, she asserts that Commissioner Pozzi "had total control over the entire disciplinary hearing process," (SAC 1; *see* P's Mem. 2), and that the "hearing committee," including AHO Sledzik and County Attorney Pruyne, was "not unbiased in the manner in which the hearing was conducted" because the AHO was "selected by the Commissioner . . . to conduct the disciplinary hearing, and was directed by the Commissioner to submit findings and recommendations to him for his review and determination," (SAC 2; *see* P's Mem. 2).[17]

Section 75 specifically states that a disciplinary hearing

---

[16] This makes sense because the Notices of Charges indicate that they were mailed to Plaintiff, (*see* Idahosa Aff. Exs. A, C–D), and the record contains affidavits of personal service on Plaintiff of the original and Second Amended Notices of Charges.  (*See* Beaty Decl. Ex. B; Idahosa Aff. Ex A.)

[17] Plaintiff also contends that her hearing was "unfair and biased" because of the conduct of her attorney, Defendant Rose.  (P's Mem. 2.)  Plaintiff does not allege, however, that the County Defendants were in any way responsible for Rose's alleged failures.  Indeed, Rose was appointed by CSEA, (SAC 1), and all purported deficiencies are alleged to be his own.  Thus, the County Defendants cannot be held liable for his alleged contributions to the allegedly biased tribunal.  Accordingly, Rose's conduct is addressed in Section E *infra*.

> shall be held by the officer or body having the power to remove the person against whom such charges are preferred, or by a deputy or other person designated by such officer or body in writing for that purpose.  In case a deputy or other person is so designated, he shall, for the purpose of such hearing, be vested with all the powers of such officer or body and shall make a record of such hearing which shall, with his recommendations, be referred to such officer or body for review and decision.

N.Y. Civ. Serv. Law § 75(2).  Based on the clear text of Section 75, it appears that Commissioner Pozzi, who had authority to terminate Plaintiff, acted in accordance with Section 75 in designating a hearing officer to handle the disciplinary hearing, and that the AHO merely followed the statutory mandate in submitting findings and a recommendation to the Commissioner for his review and decision.  The procedures set forth in Section 75, along with the availability of an Article 78 proceeding to challenge the outcome, meet the requirements of the Due Process Clause.  *Longo v. Suffolk Cnty. Police Dep't*, 429 F. Supp. 2d 553, 559–60 (E.D.N.Y. 2006) (collecting cases).  Thus, Plaintiff has failed to allege facts from which I may infer a procedural due process violation due to bias in the tribunal, and the bare assertions in the SAC are insufficient to state a claim.  *See Iqbal*, 556 U.S. at 678–79.

In any event, allegations of bias or impropriety by the AHO necessarily concern "random and unauthorized acts"—"i.e., a failure by state actors to follow the proper procedures contemplated by [Section 75]," *Whiting v. Inc. Vill. of Old Brookville*, 8 F. Supp. 2d 202, 211 (E.D.N.Y. 1998) (internal quotation marks omitted), *aff'd*, 4 F. App'x 11 (2d Cir. 2001) (summary order)—and are therefore properly brought in an Article 78 proceeding and not in federal court, *see Verri v. Nanna*, 20 F. Supp. 2d 616, 623 (S.D.N.Y. 1998) (due process claim premised on bias failed because "plaintiff could have assured that he had not been pre-judged nor terminated for inappropriate reasons" by seeking "timely, independent review" of hearing in Article 78 proceeding); *id.* at 623 n.5 ("due process does not require that the plaintiff be provided

16

with an impartial pre-termination hearing" so long as a post-termination remedy is available to

challenge the hearing); *Whiting*, 8 F. Supp. 2d at 211 ("availability of Article 78 review renders

plaintiff's procedural due process claim [alleging hearing officer's bias] fatally deficient").

> d.    Termination Decision

Although Plaintiff maintains that her due process claims are based only on procedural

defects, she appears to also challenge the outcome of her Section 75 hearing and the penalty

imposed.  She alleges that the County "never proved the elements of misconduct and

incompetence," and that "[o]n August 6, 2009, an administrative ruling by a New York State

government agency denied the misconduct and incompetence charges caused by Westchester

County."[18]  (SAC 1; *see* P's Mem. 3.)  She further alleges that her conduct was not worthy of

termination because "the breaches were essentially technical in nature and . . . there was no

intent to deliberately disrupt the department or to be insubordinate."  (P's Mem. 3.)

This challenge to the merits of Defendants' decision to terminate her is improperly

couched as a procedural due process allegation and is instead the proper subject for an Article 78

proceeding.  *See Reed*, 806 F. Supp. 2d at 617 ("[W]hether the Plaintiff's termination was

arbitrary, an abuse of discretion or disproportionate to the charge . . . are issues that speak to the

merits of the [employer's] decision.  It is not the role of this Court to determine whether the

decision to terminate the Plaintiff for his alleged misconduct was correct or supported by

sufficient evidence.  As long as . . . Defendants complied with the minimal due process

requirements for a pre-termination hearing, the Article 78 proceeding is a wholly adequate post-

---

[18] Plaintiff is apparently referring to a document she attached only to the First Amended Complaint, not the SAC.  It reflects that the New York State Department of Labor, on August 6, 2009, determined that Plaintiff was eligible for unemployment benefits because her dismissal was based on poor work performance, and thus she was not ineligible for benefits based on misconduct.  Even if I could consider the document, and even if the conclusion in it was somehow binding, it hardly supports the conclusion that the County Defendants failed to prove her incompetence.

deprivation remedy.") (internal quotation marks omitted); *McLaurin v. New Rochelle Police Officers*, 363 F. Supp. 2d 574, 578 (S.D.N.Y. 2005) ("The State of New York provides a dismissed municipal employee the opportunity to challenge his termination as arbitrary and capricious pursuant to CPLR Article 78.  Availability of Article 78 proceedings . . . bars a municipal employee from maintaining [a] § 1983 procedural due process claim."); *Ingrassia v. Cnty. of Sullivan, N.Y.*, 262 F. Supp. 2d 116, 121 (S.D.N.Y. 2003) ("It is clear that . . . the gravamen of plaintiff's Complaint is a challenge of defendant's decision to terminate her employment.  As a result, plaintiff's claims should have been presented first by way of an article 78 proceeding.").

Furthermore, the fact that Plaintiff did not raise her claim in an Article 78 proceeding and may now be barred from doing so is of no consequence.  *See HANAC*, 101 F.3d at 881 (plaintiff "cannot resuscitate its due process claim simply because an Article 78 proceeding is now barred by Article 78's four-month statute of limitations.  Where . . . Article 78 gave a meaningful opportunity" to pursue plaintiff's claims, a party is "not deprived of due process simply because [it] failed to avail [itself] of the opportunity") (alterations in original) (internal quotation marks omitted).  Accordingly, Plaintiff's due process claim is dismissed as to the County Defendants.

2.    Equal Protection

Plaintiff next alleges that the County Defendants discriminated against her on the basis of her race and thereby violated her right to equal protection under the law.  Specifically, she asserts that she was "singled out for employment termination . . . while a similarly situated Caucasian Probation Officer"—who "engaged in unethical conduct by having a sexual relationship, and consequently children with a probationer of whom she was in charge"—"was not found guilty of any disciplinary charges."  (SAC 2.)

18

Plaintiff does not specify a theory under which she seeks relief, but it appears to the Court that her claim is best construed as a selective enforcement claim, insofar as she asserts that Defendants selectively applied the civil service laws to her and singled her out for termination based on her race.  To successfully plead a selective enforcement claim, plaintiffs must "show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Brisbane v. Milano*, 443 F. App'x 593, 594 (2d Cir. 2011) (summary order) (internal quotation marks omitted); *accord Parkash v. Town of Southeast*, No. 10-CV-8098, 2011 WL 5142669, at *8 (S.D.N.Y. Sept. 30, 2011).  Furthermore, "[u]se of an impermissible consideration (such as race) must have been intentional, not merely negligent." *Brisbane*, 443 F. App'x at 594.

Plaintiff has failed to plausibly plead sufficient facts concerning either requirement.  As to the first prong, Plaintiff provides one example of an allegedly similarly situated Caucasian employee, but admits that that employee was "not found guilty of any disciplinary charges." (SAC 2.)  This statement alone undermines Plaintiff's claim to the extent that it shows that Defendants actually may have tried to terminate the comparator by asserting disciplinary charges against her but were unsuccessful because she was found not to be guilty.[19]  Furthermore, the only facts Plaintiff provides suggest that her situation and the comparator's were radically different in terms of the nature of the misconduct alleged and the number of derelictions. Plaintiff has not alleged facts plausibly indicating that she and the comparator were similarly

---

[19] Plaintiff asserts in her Memorandum that no disciplinary proceedings were held as to the comparator. (P's Mem. 4.)  If I could consider this assertion, it would not change the outcome because Plaintiff does not allege (except by implication in the contradictory statement in the SAC) that Defendants were aware of the comparator's alleged misconduct.

situated, as she has said nothing about the comparator's tenure, job duties, performance, and history of misconduct.  *See Spinks v. Orleans Cnty.*, No. 10-CV-745, 2011 WL 2491001, at *7 (W.D.N.Y. June 22, 2011) (plaintiff failed to show other named individuals were similarly situated despite alleging that they had certain characteristics in common); *Gentile v. Nulty*, 769 F. Supp. 2d 573, 580–81 (S.D.N.Y. 2011) (plaintiff failed to plead facts establishing why those to whom he compared himself were similarly situated); *Turner v. Nazareth Coll.*, No. 10-CV-6357, 2011 WL 310787, at *5 (W.D.N.Y. Jan. 28, 2011) ("Plaintiff cannot survive a motion to dismiss by merely speculating that she was treated differently" than students of different race; rather, "she must set forth enough facts to show that other similarly situated" students were treated differently).  At most the facts alleged are "merely consistent with" Plaintiff and the comparator being similarly situated, but they "stop[] short of the line between possibility and plausibility" of that conclusion.  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

As to the second prong, Plaintiff's allegations do not state a plausible claim of discriminatory intent because the SAC is entirely devoid of facts indicating that Defendants ever considered or took any action based on Plaintiff's race.  *See Brisbane*, 443 F. App'x at 595 (dismissing equal protection claim where plaintiffs merely alleged that "they are black, and that [allegedly similarly situated individuals] are white" and provided police reports "describ[ing] [individuals] by their race and sex"); *Turner*, 2011 WL 310787, at *5 (claim fails because plaintiff did not "allege facts to support her claim that the conduct occurred *because of her race*") (emphasis in original).  Accordingly, this claim is dismissed.

D.      Claims Against the CSEA Defendants

Plaintiff claims that the CSEA Defendants deprived her of due process[20] by "fail[ing] . . .

in their duty of fair representation."[21]  (SAC 1; *see* P's Mem. 1.)  Plaintiff points to three

instances of this failed duty:  (1) On March 8, 2008, Karen Pecora, Plaintiff's union delegate,[22]

"offered [Plaintiff] no advice about the grievance process or clarification of what [Plaintiff] was

facing," (SAC 1); (2) on or around April 2, 2008,[23] Pecora failed to advise Plaintiff of her "rights

as a tenured public employee in a 'worst case scenario' situation, specifically employment

termination," (P's Mem. 3); and (3) on October 28, 2008, "Barbara DeSimone, CSEA Labor

Relations Specialist expressed a negatively biased opinion of [Plaintiff's] situation ***after*** she

---

[20] The conduct that Plaintiff alleges constitutes an equal protection violation is attributed only to the County Defendants.  As such, the Court will not undertake an equal protection analysis for the CSEA Defendants or Defendant Rose.

[21] Such a duty is recognized under New York Civil Service Law § 209-a(2), which provides:

It shall be an improper practice for an employee organization or its agents deliberately (a) to interfere with, restrain or coerce public employees in the exercise of the rights granted in section two hundred two, or to cause, or attempt to cause, a public employer to do so; (b) to refuse to negotiate collectively in good faith with a public employer, provided it is the duly recognized or certified representative of the employees of such employer; or (c) to breach its duty of fair representation to public employees under this article.

Federal statutes also recognize a duty of fair representation, but a federal cause of action is not available to Plaintiff because she is a public employee.  *See Malast v. Civil Serv. Emp. Ass'n, Inc.*, No. 11-CV-1883, 2012 WL 1216883, at *1 (2d Cir. Apr. 12, 2012) (summary order) (finding that, in context of fair representation claim, district court erred in not considering fact that plaintiff was employee of municipal agency because "public employees may not bring federal duty-of-fair representation . . . claims or claims under Section 301 of the [Labor Management Relations Act]"); *United States v. Brennan*, 650 F.3d 65, 123 (2d Cir. 2011) (because plaintiffs are public employees, the "NLRA therefore does not apply to them"); *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) ("As the language of the LMRA makes plain, public employees are not covered by that statute.") (citing 29 U.S.C. § 152(2)).  Even if Plaintiff could bring a federal fair representation claim, she would be barred from doing so by the six-month statute of limitations.  *See Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995) ("hybrid" claim for wrongful discharge and breach of duty of fair representation subject to six-month statute of limitations); *Trezza v. United Workers of Am.*, No. 08-CV-9801, 2010 WL 1253533, at *5 (S.D.N.Y. Mar. 18, 2010) ("The limitations period for [federal] claims alleging a breach of the duty of fair representation is six months.").

[22] Plaintiff states that Ms. Pecora was 1st Vice President of Unit 9200 of the CSEA, (P's Mem. 1), while the CSEA Defendants state that Ms. Pecora was President of the Westchester County CSEA Unit, (CSEA Mem. 4).

[23] Plaintiff is not consistent with regard to whether her meeting with Pecora took place on April 2 or April 3, 2008.  (*Compare* P's Mem. 1, *with* P's Mem. 3.)

stated she communicated with the [Probation Department] administration, without having competent knowledge of [Plaintiff's] circumstances," (SAC 1; P's Mem. 1–2 (emphasis in original)).

To the extent Plaintiff advances a state-law claim that CSEA, Pecora, and DeSimone breached their duty of fair representation, it is time-barred.  CSEA is an employee organization as defined by New York Civil Service Law § 201(5).[24]  (CSEA Mem. 8.)  CPLR Section 217 provides the following with regard to actions against employee organizations:

> (a) Any action or proceeding against an employee organization subject to article fourteen of the civil service law or article twenty of the labor law which complains that such employee organization has breached its duty of fair representation regarding someone to whom such employee organization has a duty shall be commenced within four months of the date the employee or former employee knew or should have known that the breach has occurred, or within four months of the date the employee or former employee suffers actual harm, whichever is later.
>
> (b) Any action or proceeding by an employee or former employee against an employer subject to article fourteen of the civil service law or article twenty of the labor law, an essential element of which is that an employee organization breached its duty of fair representation to the person making the complaint, shall be commenced within four months of the date the employee or former employee knew or should have known that the breach has occurred, or within four months of the date the employee or former employee suffers actual harm, whichever is later.

---

[24] New York Civil Service Law § 201(5) provides:

The term "employee organization" means an organization of any kind having as its primary purpose the improvement of terms and conditions of employment of public employees, except that such term shall not include an organization (a) membership in which is prohibited by section one hundred five of this chapter, (b) which discriminates with regard to the terms or conditions of membership because of race, color, creed or national origin, or (c) which, in the case of public employees who hold positions by appointment or employment in the service of the board and who are excluded from the application of this article by rules and regulations of the board, admits to membership or is affiliated directly or indirectly with an organization which admits to membership persons not in the service of the board, for purposes of any provision of this article other than sections two hundred ten and two hundred eleven of this article.

N.Y. C.P.L.R. § 217(2)(a), (b).  All of the conduct by CSEA, Pecora, and DeSimone of which Plaintiff complains occurred in 2008.  (*See* SAC 1; P's Mem. 1–3 (complaining of incidents occurring in March, April, and October 2008).)  Even taking Plaintiff's termination in June 2009 as the last instance of misconduct by CSEA and its affiliates, because Plaintiff's initial Complaint was filed on January 31, 2011, it falls well outside the four-month statute of limitations set forth in Section 217 of the CPLR.  *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) ("Under New York state law, a claim against a union for violating the duty of fair representation is subject to a four-month statute of limitations.").[25]

Furthermore, any attempt to characterize this claim as one of procedural due process rather than a breach of the duty of fair representation is undermined both by Plaintiff's explicit statement that she "was injured as a result of conduct of the state officials representing the Civil Service Employees Association (CSEA) who each failed respectively in their duty of fair representation," (SAC 1), and by the substance of the claims.  Indeed, none of the conduct attributed to the CSEA Defendants could plausibly be construed as a deprivation of a property right before which process was due.

In any event, a procedural due process claim brought pursuant to Section 1983 against CSEA would fail because CSEA is not a state actor.  *See Dorcely v. Wyandanch Union Free Sch. Dist.*, No. 06-CV-1265, 2007 WL 2815809, at *3–4 (E.D.N.Y. Sept. 25, 2007) ("In order to state a claim under § 1983, Plaintiff must allege that he was injured by either a state actor or a private party acting under the color of state law," and "labor unions generally are not state actors")

---

[25] I find that exercising supplemental jurisdiction over this state-law claim (to the extent Plaintiff alleges one) is "in the interests of judicial economy, convenience, fairness, and comity" because the claim clearly lacks merit.  *Schultz v. Tribune ND, Inc.*, No. 10-CV-2652, 2011 WL 4344168, at *6 n.4 (E.D.N.Y. Sept. 14, 2011) (exercising supplemental jurisdiction over proposed state-law claim where clear that state claim "cannot survive a motion to dismiss because it would be time-barred and also precluded by the doctrine of collateral estoppel").

(alterations and internal quotation marks omitted); *id.* at *4 (fact that union represents public

employees does not make it state actor).  Nor does Plaintiff allege that CSEA, Pecora, or

DeSimone—private parties—were acting under color of state law or in concert with state actors.

The SAC and Plaintiff's memorandum are entirely devoid of facts that would raise an inference

that the CSEA Defendants were acting in concert with the County or as state actors.[26]  *See id.*

(dismissing Plaintiff's Section 1983 claims against union and its president because Plaintiff had

not shown facts that they were state actors or private parties acting under color of state law or in

concert with state actor).

Finally, to the extent that the alleged failure in representation could be viewed as an

element of Plaintiff's procedural due process claim against the County—a "public employer" as

defined in Article 14 of the New York Civil Service Law,[27] (*see* CSEA Mem. 8)—the claim is

barred on statute of limitations grounds pursuant to Section 217(2)(b) of the CPLR.

Accordingly, this claim is dismissed.

E.    Claims Against Defendant Rose

Plaintiff alleges two instances of misconduct committed by her CSEA attorney,

Defendant Rose.  First, Rose allegedly failed to present an adequate defense for Plaintiff in

response to the disciplinary charges.  Plaintiff alleges that in her meetings with Rose on October

7, 2008 and November 13, 2008, Rose ignored documentation that Plaintiff had to rebut the

---

[26] Plaintiff states that Pecora met with the Assistant Commissioner of the Probation Department, Louis Conte, on April 2, 2008, the day Plaintiff was to undergo questioning regarding the charges, prior to the questioning session.  (P's Mem. 2–3.)  Plaintiff does not allege, however, that the meeting was conspiratorial or that it related in any way to Pecora's alleged failure to properly represent Plaintiff, and nothing in the record suggests as much.  Indeed, counsel or representatives for each side routinely confer in advance of proceedings.  It would be odd if such consultations did *not* occur, and they certainly do not suggest that one side is conspiring with the other.  Likewise, DeSimone's communications with the County on Plaintiff's behalf, (P's Mem. 1–2), raise no such inference, even if DeSimone's evaluation of Plaintiff's chances of success changed as a result of those communications.

[27] New York Civil Service Law § 201(6)(a) provides:  "The term 'government' or 'public employer' means (i) the state of New York, (ii) a county, city, town, village or any other political subdivision or civil division of the state . . . ."

charges against her and failed to investigate Plaintiff's case.  (SAC 1; P's Mem. 2.)  For example, Rose "did not address" her lack of notice of "imminent discharge" and the fact that she "worked to the best of [her] ability," (P's Mem. 2), and he "consistently agreed with the disciplinary charges" and "expressed criticisms" of Plaintiff, (SAC 1–2).  Second, Rose did not advise Plaintiff that the County "was seeking to terminate [her] employment" or that she "was entitled to the opportunity to rebut reasons presented for dismissal."  (P's Mem. 3.)  Plaintiff contends that due to Rose's failures as an attorney, her Section 75 hearing was "unfair and biased."  (*Id.* at 2.)

1.    Subject Matter Jurisdiction

Defendant Rose first contends that subject matter jurisdiction is lacking with regard to Plaintiff's procedural due process claim because the federal question at issue is "based purely on state law"—that is, the "alleged due process violation is based entirely on the underlying disciplinary hearings which were conducted pursuant to [New York state law]."  (Rose Mem. 13–14.)[28]  Defendant misconstrues the claim.  The Due Process Clause protects against deprivations of constitutionally-protected interests in life, liberty, and property without due process of law.  *See Rivera-Powell*, 470 F.3d at 464.  "To determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate."  *Id.* at 465 (alteration and internal quotation marks omitted).  As such, the very heart of the inquiry often turns on an evaluation of proceedings conducted pursuant to state law.  Accordingly, subject matter jurisdiction over Plaintiff's procedural due process claim is proper.

---

[28] "Rose Mem." refers to Defendant James M. Rose's Memorandum of Law in Support of Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6).  (Doc. 61.)

2.      Procedural Due Process

Plaintiff's constitutional claim against Defendant Rose fails because Rose was not acting under color of state law and thus cannot be held liable for a purported procedural due process violation pursuant to Section 1983.  *See Dorcely*, 2007 WL 2815809, at *4.  As discussed in the context of the CSEA Defendants, Rose, an attorney retained by CSEA to represent Plaintiff, was clearly a private party and not a state actor.  Nor are there any allegations that he was acting under color of state law or in concert with state actors; the SAC does not even hint at the possibility that Rose conspired with the County Defendants to deprive Plaintiff of due process.[29] Therefore, Plaintiff's procedural due process claim is dismissed as to Defendant Rose.[30]

F.      Leave to Amend

Leave to amend should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see Zucker v. Five Towns Coll.*, No. 09-CV-4884, 2010 WL 3310698, at *3 (E.D.N.Y. Aug. 18, 2010).  It is within the discretion of the district court to grant or deny leave to amend, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and "[l]eave to amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

---

[29] That Rose may have evaluated the allegations against Plaintiff as meritorious—an occupational hazard for defense counsel—does not begin to suggest that he worked against Plaintiff.

[30] I do not read the SAC as raising a state-law malpractice claim against Defendant Rose.  If it did, I would decline to exercise jurisdiction over that claim.  *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (once all federal law claims have been dismissed, "balance of factors" usually "point[s] toward declining to exercise jurisdiction over the remaining state-law claims").  In any event, it appears that a malpractice claim would likely be unsuccessful because "a union's attorneys may not be sued by an individual union member for actions taken pursuant to a collective bargaining agreement."  *Waterman v. Transp. Workers' Union Local 100*, 176 F.3d 150, 150 (2d Cir. 1999) (per curiam); *see Ryan v. Ajami*, No. 02-CV-4019, 2002 WL 31890050, at *3 (S.D.N.Y. Dec. 30, 2002) (remanding case because court lacked subject matter jurisdiction over malpractice claim against union attorney but noting that effect of remand "may merely be to delay the inevitable dismissal of the complaint since New York State recognizes that an attorney acting on behalf of a union has immunity for claims of malpractice").

of amendment, etc.," *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (internal

quotation marks omitted).  Where the "problem with [a complaint] is substantive[ and] better

pleading will not cure it," leave to amend should be denied as futile.  *Cuoco v. Moritsugu*, 222

F.3d 99, 112 (2d Cir. 2000); *see Malester v. Adamo*, No. 09-CV-9374, 2010 WL 5065865, at *4

(S.D.N.Y. Dec. 8, 2010) ("A motion for leave to amend should be denied when allowing such an

amendment would be futile in that it could not withstand a motion to dismiss for failure to state a

claim."); *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 304 (S.D.N.Y. 1996) (leave to amend

proper where "proposed amendment would be futile, as the factors upon which plaintiffs now

would rely would be insufficient to salvage their case even if leave to amend were granted").

At a pre-motion conference on July 18, 2011, which followed letters from Defendants

summarizing the arguments Defendants intended to raise, (Docs. 12, 17, 18), the Court and the

parties discussed the deficiencies in Plaintiff's Complaint.  The Court *sua sponte* granted

Plaintiff leave to amend her Complaint to address the arguments raised in Defendants' pre-

motion conference letters.  On September 15, 2011, the Court granted Plaintiff permission to

incorporate certain edits into her Amended Complaint.  In response to the instant Motions,

Plaintiff neither has asked to amend again nor otherwise indicated that she is in possession of

facts that could cure the deficiencies identified in this Opinion.  Thus, because Plaintiff has

already had the opportunity to amend her Complaint, and because it appears to the Court that

amendment would be futile,[31] I decline to now *sua sponte* grant leave to amend again.  *See Ariel*

*(UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45–46 (2d Cir. 2008) (summary order) (district

---

[31] All the claims face legal bars that amendment could not fix, except perhaps for the selective
enforcement/equal protection claim.  But the Defendants' pre-motion letters flagged the lack of facts supporting an
inference of discrimination—one even specifically mentioned Plaintiff's failure to allege facts regarding an
appropriate comparator, (*see* Doc. 17 at 3 n.3)—and although these arguments were made in connection with
Plaintiff's Title VII claim, they sufficiently highlighted the need for Plaintiff to provide additional facts if she
wanted to allege that her race or gender led to unfair treatment.  Plaintiff having failed to provide such facts, I
decline to allow her to amend yet again.

court did not exceed its discretion in not *sua sponte* granting leave to amend where Plaintiff had already amended complaint once and amendment would have been futile); *Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*."). Furthermore, a district court has no obligation to grant leave to amend *sua sponte*. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("no court can be said to have erred in failing to grant a request [to amend the complaint] that was not made").

## IV.   <u>Conclusion</u>

For the foregoing reasons, the County Defendants' Motion is GRANTED, the CSEA Defendants' Motion is GRANTED, and Defendant Rose's Motion is GRANTED. The Clerk of the Court is respectfully directed to terminate the pending Motions, (Docs. 35, 39, 59), and close the case.

**SO ORDERED.**

Dated: May 9, 2012
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.